IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL AMANDA QUINTANA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL E. OTTE, JOSE M. VELASQUEZ, AND NICHOLAS P. KOSTIELNEY, and DOES 1 through 20,<br><br>Defendants. | Case No. 19-CV-00060<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

This case arises from Plaintiff Rachel Quintana's arrest by the San Mateo County Sheriff's Office in August 2015. Mot. to Dismiss ("Mot.") (Dkt. 39) at 1. Plaintiff claims that she was singled out due to Plaintiff's complaints to unnamed Sheriff's Deputies on two occasions. Id. Plaintiff asserts four claims for relief under 42 U.S.C. § 1983: (1) Retaliatory and false arrest; (2) Excessive use of force; (3) Retaliation in prosecution; and (4) Retaliation. Id.; First Amended Complaint ("FAC") ¶¶ 101-145 (Dkt. 38). Defendants seek to dismiss each claim. Mot. at 1. The Court hereby **GRANTS** Defendants' motion to dismiss Claims I, III, and IV with prejudice. The Court hereby **DENIES** Defendants' motion to dismiss Claim II.

## I. BACKGROUND

Plaintiff alleges the following. Her older brother, "O", was once "stopped by San Mateo County Sheriff's Deputies, arrested, and brought to the local substation." First Amended Complaint ("FAC") ¶ 21. The arrest was "without reasonable suspicion and without probable cause," and O was released without charges. Id. Plaintiff "went to the substation and complained to the sheriffs that there was no reason for them stopping O or

taking O in." Id. Plaintiff's younger brother, "Y", and his friends had also been stopped by San Mateo County Sheriff's Deputies "on multiple occasions," and, on one occasion, deputies "forced the two friends to be handcuffed and to sit down on the public street for questioning," subsequently releasing one friend and taking the other to the substation. Id. ¶ 22. Plaintiff upon observing this "warrantless and unwarranted seizure complained to the deputies that there was no basis or reason for stopping, detaining, or taking the young men in." Id.

Plaintiff's family home was "in early 2015 the subject of a threatened citation" by Code Enforcement Officer Patty Camacho. Id. ¶ 16. Camacho said that the County "would cite and prosecute her for having older vehicles" in the yard and "for having a fence that was higher than 4 feet," even though other properties in the area "were in essentially the same condition." Id. Plaintiff's complaints to the deputies regarding the treatment of her brothers "immediately pre-dated the 2015 threatened citation and prosecution," and Plaintiff believes that the threats were "at least in part" due to Plaintiff exercising her constitutional rights" by commenting on the actions taken by the sheriffs. Id. ¶¶ 23, 24.

On August 28, 2015, Defendants "interviewed Plaintiff Rachel Quintana's long-time partner and alleged complaining witness, Enrique Puluc." Id. ¶ 25. Puluc's police complaint to Defendants concerned "an event that had happened the prior evening." Id. ¶ 26. The FAC alleges that Puluc was a "complaining witness" and was interviewed in creating a Felony Report. Id. ¶ 25. Plaintiff's FAC does not explain what, specifically, Puluc's complaint alleged. See id. It states only that:

> Defendants knew when they took this report that Mr. Puluc specifically said that Rachel Quintana would say that he, Mr. Puluc hit her. Defendants knew when they took this report that the event that Mr. Puluc spoke to them about was an event that had happened the prior evening. Defendants knew when they took this report that Mr. Puluc specifically said that he did not want to prosecute any criminal charge against Plaintiff Rachel Quintana.

Id. ¶ 26. Plaintiff states that "from what [Defendants] had been told by Mr. Puluc, there

was no reasonable or viable basis for finding any criminal violation by [Plaintiff]." Id. ¶ 27. Additionally, though the FAC does not so allege, Plaintiff's Opposition to Defendants' Motion to Dismiss states that "the complaining witness hit Plaintiff." Opp. at 3.

After receiving Puluc's complaint, Defendants went to Plaintiff's home on August 28 at about 11:00 AM "with the intent to arrest Plaintiff." FAC ¶¶ 29, 30. Plaintiff alleges that a "substantial motivating factor in the Defendants' intent to arrest Plaintiff was in retaliation for the exercise by Plaintiff of her constitutional rights and the Defendants' association of Plaintiff with" her brothers. Id. ¶31. She also alleges that Defendant Otte "knew at the time that he arrived [at Plaintiff's home] that he did not have probable cause to arrest Plaintiff, that he had not applied for and would not have been able to obtain a warrant to arrest Plaintiff." Id. ¶ 32.

Plaintiff answered the door wearing a shirt and sweatpants. Id. ¶ 42. She alleges it was obvious to the Defendants that "she was not armed and did not have with her anything that could be used as a weapon." Id. Plaintiff "did not at any time threaten the defendants," nor did she "flee or attempt to flee." Id. ¶¶ 43, 44. Plaintiff was "standing at the front door, partially inside the door, with her back turned to the officers, when she was suddenly and unexpectedly forcefully grabbed by two officers by her upper arms and back." Id. ¶ 49. She "was violently pulled back and out of the door of her home" and was handcuffed. Id. ¶¶ 50, 52. Plaintiff then "fell to the ground, ending up sitting cross legged." Id. ¶ 53. The officers "then acted in concert to forcefully push Plaintiff over," where Defendant Kostielney "pulled her from the other direction" while Defendant Velasquez "pushed Plaintiff." Id. ¶ 55. The force of this "unexpected push and pull of Plaintiff caused her feet to be jammed against the cement porch floor and her legs and knees, particularly and especially her left knee, were unnaturally twisted, causing a sprain and stretching of ligaments and cartilage in her left knee." Id. ¶ 57.

On February 2, 2016, Plaintiff was charged with violations of California Penal Code § 273.5 (willful infliction of corporal injury on a spouse or cohabitant), § 243(e)(1)

3

(battery committed against a spouse), § 243(b) (battery against a peace officer), and § 148(a)(1) (resisting, delaying, or obstructing a peace officer). Id. ¶ 65. A supplemental report after the arrest by Defendant Kostielney stated that "no cellular telephones possessed any video footage of the incident." Id. ¶ 72. Plaintiff requested all video and audio recordings, but none were provided to Plaintiff. Id. ¶ 71. Plaintiff subsequently filed a Trombetta motion[1] based on the "failure to preserve, destruction of, or withholding of a video-recording made by Sergeant Otte via a cellular telephone, as documented in a recording captured by Plaintiff's brother." Id. ¶ 73. On January 5, 2017, a San Mateo Superior Court Judge granted Plaintiff's motion to dismiss the alleged charge of battery on a peace officer, finding that "[Otte] misrepresented under oath that he recorded a video." Id. ¶¶ 82, 84. On April 20, 2018, prosecutors then dismissed "the remaining charges against Plaintiff" on the basis of the prosecution's "motion to dismiss for insufficient evidence." Id. ¶ 91.

Plaintiff subsequently brought the present action. Plaintiff asserts four claims: (1) retaliatory and false arrest (FAC ¶¶ 101-111); (2) excessive force (FAC ¶¶ 112-121); (3) retaliation in prosecution (FAC ¶¶ 122-137); and (4) retaliation (FAC ¶¶ 138-145). While retaliatory arrest and false arrest are two distinct claims, Plaintiff combines both into Claim I.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court must ask whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell

---

[1] The Supreme Court decisions in California v. Trombetta, 467 U.S. 479 (1984), and Arizona v. Youngblood, 488 U.S. 51 (1988), established that the police have a duty to preserve evidence that may have "exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Rupe v. Borg, 1993 WL 170949, at *1 (9th Cir. 1993) (quoting Trombetta, 467 U.S. at 489). Due process is violated if the "police act in bad faith." Id. (quoting Youngblood, 488 U.S. at 58).

Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). All factual inferences must be drawn in favor of the non-moving party. Western Reserve Oil & Gas Co., 765 F.2d at 1430. But courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**III. DISCUSSION**

Plaintiff contends in Claims I, III, and IV both that her arrest and prosecution were unlawful and that the Defendants acted in retaliation for commenting on the actions taken by unnamed sheriffs. See generally FAC. She further contends in Claim II that the Defendants used excessive force in effectuating her arrest. Id. at ¶¶ 112-21. While Claims I, III, and IV fail as a matter of law, Plaintiff's excessive force claim, Claim II, is sufficiently pled and survives Defendants' motion to dismiss.

**A. Claim I: Retaliatory and False Arrest**

Plaintiff claims that she was arrested in "retaliation for Plaintiff exercising her constitutional rights under the First Amendment" for commenting on the actions taken by the sheriffs in relation to the arrest of her brother. FAC ¶ 107. She also alleges that her arrest was unlawful in violation of her Fourth Amendment rights. Id. ¶ 108. Both of these claims fail because the facts alleged indicate that Defendants did have probable cause to arrest her.

The Supreme Court recently held that to prevail on a claim alleging a violation of the First Amendment arising out of a retaliatory arrest, "a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019) (quoting Hartman v. Moore, 547 U.S. 250, 256 (2006)). Due to the "complex causal inquiries," a "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." Id. at 1724. Thus, when there is "probable cause to arrest [a plaintiff], [a plaintiff's] retaliatory arrest claim fails as a matter of law." Id. at 1728. The Court outlined one exception: "[W]hen a plaintiff presents objective evidence that he was

5

1 arrested when otherwise similarly situated individuals not engaged in the same sort of
2 protected speech had not been." Id. at 1727. So, too, with false arrest claims: "[P]robable
3 cause is an absolute defense to a false-arrest claim." Luchtel v. Hagemann, 623 F.3d 975,
4 984 (9th Cir. 2010).

Plaintiff alleges that Defendants "did not have probable cause to arrest Plaintiff." FAC ¶ 32; Opp. at 10-11. Plaintiff argues that Puluc's complaint to Defendants demonstrated "there was no imminent threat or harm or exigent circumstances." Opp. at 10-11. But outside of that conclusory statement in FAC ¶ 32, nowhere does Plaintiff support the claim that Defendants did not have probable cause to arrest Plaintiff. See generally FAC. Nor does Plaintiff's FAC illustrate why Puluc was not a reliable witness and why his report should not have served as the basis for probable cause for Plaintiff's arrest. Mot. at 9. This conclusory statement is insufficient to adequately plead that Defendants lacked probable cause. See Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation.").

Nor has Plaintiff alleged that, if given leave to amend, she would be able to adequately allege that Defendants lacked probable cause to arrest her. See generally Opp. Indeed, Plaintiff avers that her "long-time partner," Puluc, was an "alleged complaining witness" against her to the police. FAC ¶¶ 25-27; see also Opp. at 2. On this basis, Defendants had reason to believe that Plaintiff committed some crime based on Puluc's complaint. FAC ¶¶ 25, 26; See Maxwell v. Cnty. Of San Diego, 697 F.3d 941, 951 (9th Cir. 2012) ("Probable cause exists if the arresting officers 'had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that [the arrestee] had committed or was committing a crime.'" (quoting United States v. Ricardo D., 912 F.2d 337, 342 (9th Cir. 1990))); accord Peng v. Mei Chin Penghu, 335 F.3d 970, 978 (9th Cir. 2003) (holding that "facts sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect was the perpetrator" support a finding of probable cause).

Both because Plaintiff does not sufficiently plead an absence of probable cause, and because the FAC in fact alleges that Defendants had probable cause for Plaintiff's arrest, the Court concludes that further leave to amend is not warranted as to Claim I. Claim I is therefore dismissed with prejudice.

### B. Claim II – Excessive Force

Plaintiff next alleges that the Defendants used excessive force in violation of her constitutional rights. FAC ¶ 113. Plaintiff has sufficiently pled facts demonstrating that the force Defendants used to effectuate her arrest was objectively unreasonable. See id. ¶¶ 42-62. And though Defendants urge that they are entitled to qualified immunity, Mot. at 10, Ninth Circuit precedent clearly establishes that the force Plaintiff alleges that Defendants used was excessive. See generally Santos v. Gates, 287 F.3d 846 (9th Cir. 2002). As a result, Defendants' qualified immunity defense fails.

As discussed above, the FAC alleges the following: Plaintiff got to the front door "wearing a shirt, old sweats, and underwear. She did not have on socks or shoes." FAC ¶ 42. Plaintiff avers that it was "obvious to anyone who saw her," including Defendants, that she was "not armed and did not have with her anything that could be used as a weapon." Id. Plaintiff "did not at any time threaten the defendants," nor did she "flee or attempt to flee." Id. ¶¶ 43, 44. Plaintiff was "standing at the front door, partially inside the door, with her back turned to the officers, when she was suddenly and unexpectedly forcefully grabbed by two officers by her upper arms and back." Id. ¶ 49. Plaintiff avers she "was violently pulled back and out of the door of her home" and was handcuffed. Id. ¶¶ 50, 52. Plaintiff then "fell to the ground, ending up sitting cross legged." Id. ¶ 53. The officers "then acted in concert to forcefully push Plaintiff over," where Defendant Kostielney "pulled her from the other direction" while Defendant Velasquez "pushed Plaintiff." Id. ¶ 55. The force of this "unexpected push and pull of Plaintiff caused her feet to be jammed against the cement porch floor and her legs and knees, particularly and especially her left knee, were unnaturally twisted, causing a sprain and stretching of ligaments and cartilage in her left knee." Id. ¶ 57.

### 1. Reasonableness of Defendants' Use of Force

Whether a defendant's use of force was excessive requires asking "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989) (internal quotations omitted). This requires "balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." Id. at 396 (internal quotations omitted). Courts may consider a non-exhaustive list of considerations that bear on the reasonableness or unreasonableness of the force used, colloquially referred to as the Graham factors:

> [T]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015) (citing Graham, 490 U.S. at 396). The "most important factor," however, is "whether [a plaintiff] posed an immediate threat to the safety of officers or others." Vos v. City of Newport Beach, 892 F.3d 1024, 1032 (9th Cir. 2018), cert. denied sub nom. City of Newport Beach, Cal. v. Vos, No. 18-672, 2019 WL 2166407 (U.S. May 20, 2019). Determining whether the use of force was objectively reasonable or unreasonable is usually a question for the jury, as a "finding for a plaintiff in an excessive force case may unquestionably rest on inferences drawn from circumstantial evidence." Santos, 287 F.3d at 852. Whether or not the evidence in the record establishes liability on the part of the defendants "depends on the resolution of disputed questions of fact and determinations of credibility, as well as on the drawing of inferences, all of which are manifestly the province of a jury." Id. (quoting United States v. Goode, 814 F.2d 1353 (9th Cir. 1987)).

Defendants argue that the use of handcuffs is warranted in inherently dangerous settings to minimize the risk of harm to suspects, officers, and innocent third parties, and when weighed against "the government's interest in this case (detaining and arresting a

8

domestic violence suspect), the intrusion alleged by Plaintiff, even assuming the facts as pled are true, was objectively reasonable." Mot. at 11. Defendants urge that the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. (citing Muehler v. Mena, 544 U.S. 93, 99 (2005)). Defendants therefore argue that Plaintiff does not allege facts that could lead to the conclusion that Defendants used a degree of force that "no reasonable officer would have believed to be necessary or appropriate." Mot. at 12. They further argue that the push was permissible, citing to an instance where officers who "dragged [plaintiff] off of her seat and handcuffed her," were found not to have used excessive force in violation of the plaintiff's Fourth Amendment rights. Rep. at 7-8 (citing Abdel-Shafy v. City of San Jose, 2019 WL 570759, at *10 (N.D. Cal. Feb. 12, 2019)). Defendants also cite to a number of cases from the Ninth Circuit rejecting excessive force as to conduct such as grabbing a 60-year-old-woman's arm and applying physical force to handcuff her, Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 921 (9th Cir. 2001), or shoving a suspect to the ground and handcuffing him, Bennett v. Gow, 345 F. App'x 286, 287 (9th Cir. 2009). Accordingly, they argue Claim II should be dismissed. Id.

Plaintiff responds that she was "compliant, handcuffed, [and] in a cross-legged position" when the officers pushed her over. Opp. at 12-13; FAC ¶¶ 53-57. Plaintiff argues that none of the factors as articulated in Graham were present to justify the use of force. Opp. at 13. Plaintiff urges that the severity of the crime at issue is mitigated by the fact that "there was no crime committed," that Plaintiff was "unarmed" and that Plaintiff "was not resisting arrest or fleeing." Id. As a result, Plaintiff urges that the use of force to push Plaintiff over "was objectively unreasonable." Id. at 14.

Plaintiff is correct that she has adequately pled that Defendants' force was excessive in violation of the Fourth Amendment. In Santos v. Gates, 287 F.3d 846 (9th Cir. 2002), the Ninth Circuit held that the question whether the force applied by officers, who "grabbed" a Plaintiff's arm and shoulder and "'guided' him down to the ground," was "properly for the jury" and reversed summary judgment previously granted for the

9

1    Defendants. Id. at 849, 856.

2    Santos reached that conclusion in light of three Graham factors: 1) "the crime at
issue was not at all serious."; 2) "the officers admitted that Santos did not pose a
significant or immediate safety risk."; and 3) "there is no evidence that Santos actively
resisted arrest; under any account of the events he did not struggle with the officers but in
fact evinced a willingness to submit to their assertions of authority." Id. at 854. The court
also considered "the nature of the intrusion," and found it "quite severe: as a result of
being taken to the ground, Santos suffered a broken vertebra which caused him both pain
and immobility." Id. at 853-54; see also Alexis v. McDonald's Restaurants of
Massachusetts, Inc., 67 F.3d 341, 353 (1st Cir. 1995) (holding that police officers used
excessive force when they "abruptly pulled" a plaintiff, "then handcuffed [her] with her
hands behind her back and dragged and carried to a police cruiser and pushed [her]
inside[.]").

Taking Plaintiff's allegations in the FAC as true, the force Defendants used was
unreasonable in context under Santos and Graham. See generally Graham, 490 U.S. 386;
Santos, 287 F.3d 846. According to the FAC, Plaintiff "did not at any time threaten either
the defendants or the other officers who were present," Plaintiff "did not at any time flee or
attempt to flee," and "nothing that was said by anyone, and nothing that was done by
anyone" would lead the Defendants to believe that Plaintiff posed "an immediate threat to
the safety of officers." FAC ¶¶ 43-45. Furthermore, the extent of the plaintiff's injury is
severe: she suffers from "permanent injury to her left knee." Id. ¶ 57. Nor does the FAC
indicate there was "any effort made by the [Defendants] to temper or to limit the amount of
force." Kingsley, 135 S. Ct. at 2473 (citing Graham, 490 U.S. at 396). So, as in Santos, the
FAC here alleges that Defendants had no reason to believe that Plaintiff was an immediate
risk to their safety, particularly after she was handcuffed and sitting on the ground, that
Plaintiff did not resist arrest or "struggle with the officers," Santos, 287 F.3d at 854, and
yet she suffered a serious injury: permanent harm to her knee. FAC ¶ 57. A reasonable
jury, taking these allegations as true, could therefore find that the force Defendants are

alleged to have used was objectively unreasonable in violation of the Fourth Amendment.

### 2. Qualified Immunity

The foregoing conclusion does not, however, end the inquiry, because Defendants argue that the affirmative defense of qualified immunity mandates the dismissal of Claim II, even if the force applied was unreasonable. Mot. at 10.

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotations omitted). "For a right to be clearly established, case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." Shafer v. Cty. of Santa Barbara, 868 F.3d 1110, 1117 (9th Cir. 2017), cert. denied sub nom. Shafer v. Padilla, 138 S. Ct. 2582 (2018). Thus, a Plaintiff must "identify a case where an officer acting under similar circumstances. . . was held to have violated the Fourth Amendment." White v. Pauly, 137 S. Ct. 548, 552 (2017). And while this does not necessarily "require a case directly on point," "existing precedent must have placed the statutory or constitutional question beyond debate." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). Therefore, "Plaintiffs must point to prior case law that articulates a constitutional rule specific enough to alert these deputies in this case that their particular conduct was unlawful. To achieve that kind of notice, the prior precedent must be controlling—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a consensus of courts outside the relevant jurisdiction." Sharp v. Cty. of Orange, 871 F.3d 901, 911 (9th Cir. 2017) (internal quotations omitted).

Even if an individual's "use of force was not objectively reasonable," defendants may "nonetheless be entitled to qualified immunity." Cortesluna v. Leon, 2018 WL 6727824, at *9 (N.D. Cal. Dec. 21, 2018). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are

11

entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." Kisela v. Hughes, 138 S. Ct. 1148, 1153 (2018) (internal citation and quotation marks omitted). In making this determination, courts consider "the state of the law at the time of the alleged violation" as well as the information that the official possessed "to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal." Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007) (internal quotations omitted). Furthermore, "the plaintiff bears the burden to show that the contours of the right were clearly established." Clairmont v. Sound Mental Health, 632 F.3d 1091, 1109 (9th Cir. 2011).

Of particular note for qualified immunity defenses to excessive force claims, the Ninth Circuit has cautioned that whether an officer acted reasonably "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom." Santos, 287 F.3d at 853; Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) ("such cases almost always turn on a jury's credibility determinations"); Liston v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (as amended) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury."); Chew v. Gates, 27 F.3d 1432, 1443 (9th Cir. 1994) ("[W]hether a particular use of force was reasonable is rarely determinable as a matter of law."). So, in the context of excessive force claims, "[i]f a jury ultimately finds that Santos's injuries were caused by the officers' use of excessive force, there will in all likelihood be no basis for qualified immunity." Santos, 287 F.3d at 852 n.7.

That is precisely the case here. As discussed, Plaintiff has adequately alleged that the officers used unreasonable force in arresting her. See supra at III.B.2. And so, [w]hether the officers are entitled to qualified immunity may depend in large part on factual determinations the jury will be required to make." Smith, 394 F.3d at 704. If the use of force is found to be excessive, any reasonable officer would know that the force was excessive, and that officer would not be entitled to qualified immunity. See id.; LaLonde

v. Cty. of Riverside, 204 F.3d 947, 961 (9th Cir. 2000).[2] Thus, Defendants are not entitled to qualified immunity on Claim II at this time. Defendants motion to dismiss Claim II is therefore denied.

### C. Claim III – Retaliatory Prosecution

Claim III alleges that the Defendants were a substantial cause of the continued prosecution of each of the criminal charges against Plaintiff. FAC ¶ 129.

To plead a claim of retaliatory prosecution, a plaintiff "must show that the nonprosecuting official acted in retaliation, and must also show that he induced the prosecutor to bring charges that would not have been initiated without his urging." Hartman v. Moore, 547 U.S. 250, 262 (2006). Furthermore, due to the "complexity of causation in a claim that prosecution was induced by an official bent on retaliation," "an absence of probable cause . . . must be pleaded and proven." Hartman, 547 U.S. at 265–66. A plaintiff must therefore demonstrate that the prosecution occurred not only without probable cause, but also that the prosecution was "motivated by retaliation against the plaintiff's protected speech." Beck v. City of Upland, 527 F.3d 853, 864 (9th Cir. 2008).

As with Claim I, because Plaintiff does not plead the absence of probable cause for her prosecution, and because Plaintiff fails to connect the Defendants to Plaintiff's past speech the prosecution allegedly retaliated against, the Court GRANTS the motion to dismiss Claim III with prejudice.[3]

---

[2] The case Defendants rely on is not to the contrary. They argue that there is no clearly established law stating that "the act of pushing an arrestee violates a Constitutional right," and cite to a Ninth Circuit case that held that "a little shove" or a "push shove" was not unconstitutional. Mot. at 10 (quoting Parker v. City of Los Angeles, 726 F. App'x 546, 548 (9th Cir. 2018)). But that argument misstates the alleged facts; Plaintiff does not allege that Defendants gave her a "little shove;" she alleges that they performed a "violent and unexpected pushing." FAC ¶ 57.
[3] While the conduct of Defendants in destroying and covering up cell phone evidence is puzzling and concerning, it bears little relation to her claim for retaliatory prosecution due to the presence of probable cause for her arrest. Plaintiff alleges that the actions and statements of the Defendants were "a substantial cause of the prosecution and continued prosecution of each of the charges," and further urges that the prosecution of each of the charges "would not have been pursued but for defendants' destruction of evidence." FAC ¶¶ 93, 94. Plaintiff, however, does not support this averment with any facts. Furthermore, that probable cause for the arrest existed forecloses the retaliatory prosecution claim.

13

### D. Claim IV – Retaliation

Claim IV alleges retaliation in violation of Plaintiff's First and Fourth Amendment rights. FAC ¶¶ 138-143. Because Plaintiff does not allege that Defendants retaliated against her due to her complaints to unnamed sheriffs, Claim IV fails.

To plead a claim of retaliation, a plaintiff must allege that "(1) [s]he engaged in constitutionally protected activity; (2) as a result, [s]he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." Mulligan v. Nichols, 835 F.3d 983, 988 (9th Cir. 2016) (internal quotations omitted). The Supreme Court has held that a plaintiff "likely could not have maintained a retaliation claim against [an] arresting officer," because the officer appears to have acted in good faith, and because "there is no showing that the officer had any knowledge of [plaintiff's] prior speech or any motive to arrest him for his earlier expressive activities." Lozman v. City of Riviera Beach, Fla., 138 S. Ct. 1945, 1954 (2018).

Plaintiff alleges that "Defendants Velasquez and Kostielney stopped and detained Plaintiff" for questioning on a frequent and repeated basis between August of 2015 and May of 2018 without a reasonable suspicion that Plaintiff was then engaged in criminal activity." FAC ¶ 139. Plaintiff alleges they did so to "silence Plaintiff in asserting her First Amendment rights to petition for redress of grievances." Id. ¶ 141. Plaintiff's grievance ultimately arises from her allegation that "the threatened citation and prosecution stated by Code Enforcement Officer Camacho" was "at least in part for Plaintiff exercising her constitutional rights under the First Amendment to free speech and to comment on the actions taken by the sheriffs in performance of their duties performed in public." Id. ¶ 24. The threatened citation occurred immediately after Plaintiff voiced her complaints to deputies for detaining her brother and his friends. Id. ¶¶ 16-24. Plaintiff further alleges her ultimate arrest, after Puluc's complaint to the Sheriff, "was in retaliation for the exercise by Plaintiff of her constitutional rights and the Defendants' association of

Plaintiff with" her brothers. Id. ¶ 31.

Defendants argue that Plaintiff "failed to plead that her alleged complaint about the deputies' treatment of her brothers' friends was a substantial or motivating factor for the alleged questioning by Defendants." Mot. at 15. As a result, Defendants argue, Plaintiff cannot establish a claim for First Amendment retaliation. Id. Defendants are correct. Plaintiff only alleges that Defendants Velasquez and Kostielney made "frequent and repeated stops of Plaintiff," and that a substantial motivating factor in Defendants' conduct "was retaliation for Plaintiff exercising her constitutional rights under the First Amendment to free speech and to comment on the actions taken by sheriffs in performance of their duties performed in public, retaliation for associating Plaintiff with her older brother." Id. ¶ 107. However, Plaintiff fails to connect the named Defendants with the past alleged harassment of her brother. See generally FAC. Plaintiff thus faces precisely the same problem that the Supreme Court explained in Lozman: when there "is no showing that [Defendants] had any knowledge of [Plaintiff's] prior speech or any motive to arrest [her] for [her] earlier expressive activities," a retaliation claim likely cannot survive. 138 S. Ct. at 1954. Plaintiff has failed to allege facts demonstrating that the officers who allegedly retaliated against her exercise of free speech did so because she complained about the unnamed deputies' treatment of her brothers. Mot. at 15. Because Plaintiff has not indicated that it can remedy this issue with amendment, the Court grants the motion to dismiss Claim IV with prejudice.[4]

---

[4] Plaintiff also alleges that the Defendants "stopped and detained Plaintiff" on a frequent and repeated basis between August of 2015 and May of 2018. FAC ¶ 139. Plaintiff cites to Terry v. Ohio, 392 U.S. 1 (1968) to argue that the stops by Defendants violated her Fourth Amendment rights. Opp. at 17-18. Defendants argue that the FAC does not allege facts establishing that Plaintiff was detained. Rep. at 7. Defendants are correct, as Plaintiff alleges, without factual support, that the Defendants actions constituted detentions but fails to explain how or why these actions constituted Fourth Amendment violations. See FAC ¶¶ 136-145.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Defendants' motion to dismiss with prejudice Claims I, III, and IV, and hereby **DENIES** Defendants' motion to dismiss Claim II.

**IT IS SO ORDERED.**

Dated: July 26, 2019

_____
CHARLES R. BREYER
United States District Judge